**Marcellus WILLIAMS, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. SC 86095.

Supreme Court of Missouri,
En Banc.

June 21, 2005.

As Modified on Denial of Rehearing
Aug. 30, 2005.

Melinda K. Pendergraph, Office of the Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

RICHARD B. TEITELMAN, Judge.

Marcellus Williams was sentenced to death for the murder of Felicia Gayle. Williams appeals a judgment overruling his Rule 29.15 motion for post-conviction relief. The judgment is affirmed.

### FACTS

On August 11, 1998, Williams drove his grandfather's car to a bus stop and then took a bus to University City, Missouri. While in University City, Williams burglarized Felicia Gayle's home and fatally stabbed her. After the murder, Williams washed off and took a jacket to conceal his bloody shirt. He left Gayle's home with her purse and her husband's laptop computer.

Williams returned to the bus stop, retrieved the car, and then picked up his girlfriend, Laura Asaro. Asaro testified at trial that she saw Williams' bloody shirt and the laptop computer. She also saw Williams place the clothes in his backpack and throw the backpack into a storm sewer. Asaro further testified that, the next day, while retrieving some of her clothing from the car trunk, she found Gayle's purse, which contained Gayle's state identification card, coin purse, and several grocery coupons. Asaro confronted Williams about the items. Williams then confessed to Asaro the details of the murder. A few days later, Asaro also discovered a calculator and a ruler in the car. Both of these items belonged to Gayle.

Approximately three weeks later, Williams was arrested on unrelated charges and incarcerated in the St. Louis City workhouse. At that point, no arrest had been made in the Gayle case and Williams was not a suspect. However, in May 1999, Williams was talking with his cellmate, Henry Cole, and confessed to the murder. Cole was released from jail in June 1999 and went to the University City police and told of Williams' involvement in the murder, including details that had not been publicly reported. In November 1999, Asaro also told University City police that Williams had confessed to Gayle's murder. The police searched the car Williams had driven on the day of the murder and found some of Gayle's personal belongings in the car trunk. The police also recovered Gayle's husband's laptop computer from Glenn Roberts. Roberts was an acquaintance of Williams to whom he had sold the laptop after the murder.

Williams was tried and convicted of one count of first-degree murder, first-degree burglary, and first-degree robbery and two counts of armed criminal action. Williams

was sentenced to death on the murder conviction. This Court affirmed the conviction and sentence on direct appeal. *State v. Williams,* 97 S.W.3d 462 (Mo. banc 2003).

Williams timely filed his *pro se* Rule 29.15 motion for post-conviction relief, alleging several instances of ineffective assistance of counsel. Appointed counsel filed an amended motion. The court held a hearing on Williams' claim that counsel was ineffective for failing to allow Williams to testify during the penalty phase but denied Williams' request for a hearing on the remaining claims. The court entered judgement overruling Williams' motion. Williams appeals.

## STANDARD OF REVIEW

■ Rule 29.15 sets forth the procedure for litigating claims of ineffective assistance of counsel where the defendant has been convicted of a felony. There are two components to a claim of ineffective assistance of counsel. First, a movant must show that counsel's performance "did not conform to the degree of skill, care, and diligence of a reasonably competent attorney." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a presumption that counsel acted professionally and that any challenged action was part of counsel's sound trial strategy. *Id.* Second, if the movant establishes that counsel's performance was not reasonably competent, then the movant must demonstrate the he or she was prejudiced by counsel's performance. *Id.* To demonstrate prejudice, a movant must show that, but for counsel's poor performance, there is a reasonable probability that the outcome of the court proceeding would have been different. *Id.* A movant may obtain an evidentiary hearing on his or her Rule 29.15 motion only if: (1) the motion alleges facts, not conclu-

sions, warranting relief; (2) the facts alleged raise matters not refuted by the record; and, (3) the facts alleged must establish prejudice. *Ringo v. State,* 120 S.W.3d 743, 745 (Mo. banc 2003).

■ "This Court will uphold the findings and conclusions of the motion court unless they are clearly erroneous." *Morrow v. State,* 21 S.W.3d 819, 822 (Mo. banc 2000); Rule 29.15(k). Findings and conclusions are clearly erroneous if, after reviewing the entire record, the appellate court has the definite and firm impression that a mistake has been made. *Moss v. State,* 10 S.W.3d 508, 511 (Mo. banc 2000).

## ANALYSIS

### I. Prosecutorial Misconduct

■ The state must disclose exculpatory evidence, including evidence that may be used to impeach a government witness. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Rule 25.03. Williams argues that the state failed to disclose the addresses of Henry Cole and Laura Asaro, failed to disclose impeachment evidence regarding Cole and Asaro, and that the state attempted to manufacture evidence against Williams.

Rule 29.15(a) permits a person convicted of a felony to set forth claims that the conviction and sentence "violates the constitution and laws of this state or the constitution of the United States." However, Rule 29.15 is not a substitute for direct appeal, and this Court has held that "the state's alleged failure to comply with [movant's] discovery request is a claim of trial error, which is outside the scope of a Rule 29.15 motion." *State v. Carter,* 955 S.W.2d 548, 555 (Mo. banc 1997). Nonetheless, other cases dealing with Rule 29.15 have reviewed similar claims on the merits. *See Middleton v. State,* 103 S.W.3d 726 (Mo. banc 2003)(reviewing a Rule 29.15 claim

alleging the state's failure to disclose a "deal" with a prosecution witness). Although Williams' point is arguably a claim for direct appeal and not for a Rule 29.15 motion, the motion court assessed Williams' claim and determined that Williams' claims of prosecutorial misconduct were refuted by the record and did not warrant an evidentiary hearing. A review of the record and the motion court's findings on this issue reveals that the court did not clearly err in denying Williams' claim.

■ The trial began on June 4, 2001. In March 2000, the state applied to preserve the testimony of Cole and Asaro by deposition because both witnesses allegedly feared reprisal by Williams and had not been in regular contact with police or prosecutors. In May 2000, the prosecutor notified Williams' counsel that Cole and Asaro had made videotaped statements and that those statements were available for viewing. Williams' counsel was, therefore, aware that Cole and Asaro were potential witnesses for more than a year prior to the trial and had access to their statements. Furthermore, on March 13, 2001, nearly three months prior to trial, the state provided Williams' counsel with Cole's New York address and Asaro's St. Louis address. The state also provided defense counsel with the videotaped statements and with police reports concerning both of them. As the motion court found, the state did not conceal the whereabouts or statements of Cole and Asaro such that Williams' counsel was prevented from adequately investigating their statements and credibility.

■ Williams' argument that motion court clearly erred by not finding that the state failed to disclose impeachment evidence regarding Cole and Asaro is similarly without merit because the "prosecution has no obligation to disclose evidence of which the defense is already aware and which the defense can acquire." *State v. Brooks*, 960 S.W.2d 479, 494 (Mo. banc 1997). During discovery in the Rule 29.15 case, Williams filed extensive requests for production on the state that included Cole's and Asaro's medical and psychiatric records from a variety of different federal, state, and private institutions. The state responded by allowing defense counsel to inspect and copy everything in the state's file on the case. If Williams' counsel wanted to acquire Cole's and Asaro's medical and psychiatric records, the discovery requests should have been directed at the entities holding those records.

■ Finally, Williams alleges that the state manufactured evidence against him because the prosecutor offered to assist two other men with their ongoing criminal prosecutions if they would testify against Williams. Although neither man testified at trial, Williams's Rule 29.15 motion alleges that he was prejudiced because the fact that "agents for the state were willing to manufacture evidence taints the veracity of the testimony from the State's paid snitches." It is speculative and conclusory to allege that the prosecutor's offer of assistance to two men who did not testify at trial is tantamount to the "manufacture" of evidence that negatively impacts the credibility of witnesses who testified and were subject to cross-examination. The motion court did not err in denying this claim without an evidentiary hearing.

## II. *Ineffective Assistance of Trial Counsel*

### A. *Failure to Investigate and Impeach Henry Cole*

■ Williams alleges that the motion court clearly erred in denying his claim that trial counsel was ineffective for not investigating several of Henry Cole's fami-

ly members and for not obtaining expert testimony to establish that Henry Cole was mentally ill and dishonest. Williams alleges that Cole's family would have testified that Cole is dishonest.

 To prevail on a claim of ineffective assistance of counsel for failure to call a witness, a defendant must show that: (1) trial counsel knew or should have known of the existence of the witness; (2) the witness could be located through reasonable investigation; (3) the witness would testify; and (4) the witness' testimony would have produced a viable defense. *Hutchison v. State*, 150 S.W.3d 292, 304 (Mo. banc 2004). Counsel's decision to not call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise. *Id.*

Nearly all of the alleged testimony that Mr. Cole's family members could have offered involved prior misconduct such as domestic violence and drug and alcohol abuse. Williams argues that this Court's decision in *State v. Long*, 140 S.W.3d 27, 30 (Mo. banc 2004), allows the admission of testimony from Mr. Cole's family to impeach his testimony. However, the *Long* decision did not abrogate the rule that extrinsic evidence of prior witness misconduct is generally inadmissible. To the contrary, *Long* expressly upheld the rule that extrinsic evidence of prior, specific acts of misconduct is generally inadmissible and held only that a witness may be impeached with extrinsic evidence "in some cases" where the "prosecuting witness" has made prior false allegations. *Id.* at 31. Mr. Cole was neither a victim nor a prosecuting witness. Therefore, as the motion court found, any testimony regarding Cole's prior, unrelated misconduct was not admissible to impeach his trial testimony. Trial counsel was not ineffective for declin-

ing to investigate and introduce inadmissible evidence. *State v. Ferguson*, 20 S.W.3d 485, 507 (Mo. banc), *cert. denied*, 531 U.S. 1019, 121 S.Ct. 582, 148 L.Ed.2d 499 (2000).

 Williams also contends that counsel was ineffective for failing to investigate Cole's alleged mental illnesses in order to have him declared incompetent to testify. Williams' Rule 29.15 motion alleged that Cole had previously been treated for drug addiction and mental illness and did not specify any information in his records that would have established Cole's incompetence to testify. From this assertion, Williams concludes that the information in Cole's records would have caused the trial court to find Cole incompetent to testify. Williams' allegations are speculative conclusions, not facts, and the motion court properly dismissed this claim without an evidentiary hearing.

B. *Failure to Investigate and Impeach Laura Asaro*

 Williams argues that counsel was ineffective for not interviewing and calling two potential witnesses who would have testified that Asaro was a drug addict and prostitute who was framing Williams in order to receive a $10,000 reward that had been offered in the case. As the motion court correctly found, this testimony would have been cumulative to the evidence at trial because the record contained evidence of Asaro's drug addiction, prostitution, and that she might receive reward money for testifying at trial. Counsel will not be found ineffective for deciding not to introduce cumulative evidence. *Skillicorn v. State*, 22 S.W.3d 678, 683 (Mo. banc 2000). The motion court did not clearly err in denying an evidentiary hearing on this claim.

■ Williams also alleges that counsel was ineffective for failing to investigate and offer testimony from Asaro's mother. Williams alleges that Asaro's mother would have testified that Williams' car was inoperable in August 1998. The allegation that she knew that Williams' car was inoperable during the time the murder was committed is conclusory because it is based only upon the allegation that on several occasions in August 1998 she saw Asaro and Williams use public transit. This allegation does not establish that Williams' car was inoperable on the date of the murder and that Asaro was, therefore, lying when she testified that Williams gave her a ride on the day of the murder. The testimony also would have been cumulative because Williams' brother testified at trial that the car was inoperable. The motion court did not clearly err in denying an evidentiary hearing on this claim.

Williams also alleges that trial counsel was ineffective for failing to investigate and call Asaro's mother to testify Asaro had given her coupons and that these coupons may have been obtained from the victim's purse. The motion court did not clearly err in denying this claim without a hearing. The allegation that Asaro gave her mother some coupons does not establish that they were, in fact, the same coupons that had been in the victim's purse. Absent a factual allegation that the coupons were obtained from Gayle, this allegation is conclusory and does not warrant an evidentiary hearing.

■ Williams also alleged that Asaro's mother would have testified that she had not read any letters Williams sent to Asaro from jail. Williams argues that his testimony would have impeached Asaro's trial testimony that Williams had written a letter asking her not to tell about the "U. City incident" but that she did not have the letter because her mother had thrown

it away. This claim does not warrant an evidentiary hearing because it would not have impeached Asaro. Asaro testified, consistent with her mother's alleged potential testimony, that she was the only person who had read Williams' letter. This testimony would not have provided Williams with a viable defense. The motion court did not clearly err in denying this claim without a hearing.

■ Williams also alleges that counsel was ineffective for failing to investigate several of his family members who would have testified that Asaro had keys to his car and had access to the car trunk. Williams maintains that this testimony would have shown that Asaro was involved in the murders and was setting him up. However, there was trial testimony that Asaro had access to the car trunk after Williams was incarcerated. Asaro admitted at trial that she had accessed the car trunk to retrieve her clothing after Williams had been incarcerated. Williams' brother and cousin both testified that they saw Asaro use keys to access the car trunk after Williams was incarcerated. The motion court did not err in denying an evidentiary hearing on Williams' claims that counsel was ineffective for eliciting this cumulative testimony.

■ Finally, Williams argues that trial counsel was ineffective for failing to test Asaro's "blood, hair, and fibers" in order to connect her to the crime scene. The allegations contain no specific facts, but instead rely upon speculative conclusions that if such testing was performed, it would show that Asaro was present at the crime scene. The motion court did not clearly err in finding that these allegations plead conclusions, not facts, and did not warrant an evidentiary hearing.

### C. Failure to request a limiting instruction

During the guilt phase, the state introduced evidence that Williams attempted to escape from custody and, in the process, assaulted a guard. Defense counsel did not request a limiting instruction. On direct appeal, this Court held that the evidence was properly admitted as evidence of Williams' guilt. *Williams*, 97 S.W.3d at 469.

Williams argues that trial counsel was ineffective for failing to offer MAI–CR 3d 310.12, which is a limiting instruction regarding evidence that the defendant was involved in offenses other than those for which he is being tried. In his Rule 29.15 motion, Williams alleges that had counsel offered an instruction patterned after MAI–CR 3d 310.12, "the jury could not have used the evidence improperly as propensity or character evidence." The motion court concluded that this allegation was speculation regarding the jury's assessment of the escape evidence and that Williams' allegations were conclusions, not facts. The motion court also concluded that the decision to not request a limiting instruction was a matter of trial strategy because a limiting instruction may have served only to highlight the state's evidence. The motion court did not clearly err in denying an evidentiary hearing on this claim.

### D. Failure to introduce mitigation evidence

Williams alleges that trial counsel was ineffective for failing to introduce sufficient evidence of his social history during the penalty phase in order to rebut the state's evidence of aggravating factors. At the evidentiary hearing regarding Williams' claim, Williams' counsel testified that the strategy during the penalty phase was to advance the theory of "residual doubt" regarding Williams' actu-al guilt. By presenting evidence "to show how [Williams] grew up, that he had a family network of a mother and aunts and brothers and sister," counsel attempted to convince the jury to impose life imprisonment based upon residual doubt that Williams had committed the murders. Even though the jury had found beyond a reasonable doubt that Williams was legally guilty, counsel was attempting to persuade the jury to impose a life sentence based upon lingering doubt as to his actual guilt. The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim. *Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc 1992). The motion court found that an abusive childhood defense would have been inconsistent with the penalty phase strategy and would not have changed the jury's sentence. The motion court did not clearly err in denying this claim without an evidentiary hearing.

### E. Failure to file a motion to quash the indictment

Williams contends that the trial counsel was ineffective for not objecting to the indictment because it did not plead statutory aggravating circumstances. The motion court did not clearly err in overruling this claim without an evidentiary hearing because the claim fails as a matter of law. This Court has held repeatedly that "statutory aggravating circumstances need not be pleaded in the information or indictment." *State v. Strong*, 142 S.W.3d 702, 711–712 (Mo. banc 2004); see also, *State v. Tisius*, 92 S.W.3d 751, 766–767 (Mo. banc 2002).

### F. Failure to advise Williams of his right to testify

Williams claims the motion court clearly erred in overruling, after an evidentiary hearing, his claim that counsel was ineffective for not allowing him to

testify during the penalty phase. Williams alleges he was prejudiced because he was the only person who could have explained to the jury how he came to possess the victim's husband's laptop computer and that Laura Asaro had participated in Gayle's murder. Williams argues that the motion court clearly erred in finding that he was, in fact, informed of his right to testify because both of his trial attorneys testified that they did not recall discussing with Williams his right to testify during the penalty phase.

At the evidentiary hearing, both of Williams' trial attorneys testified and Williams' testimony was offered through his deposition. The motion court found that Williams' testimony that he was not informed of his right to testify was not credible because both of his attorneys were experienced in capital cases and it was standard practice for both attorneys to advise their capital clients of their right to testify. The motion court also found that Williams was present at voir dire during which both the guilt and penalty phases were explained. The record supports the motion court's finding that Williams was informed that he had a right to testify during the penalty phase. The court did not clearly err in denying this claim.

### III. *Ineffective Assistance of Appellate Counsel*

A. *Failure to raise on appeal overruling of motion for continuance*

▮ On May 7, 2001, nearly a month prior to trial, Williams' trial counsel filed a motion for continuance asserting a need for more time to prepare. The trial court heard oral arguments and overruled the motion two days later. On May 25, 2001, counsel filed a supplemental motion for continuance. Williams alleged, among other things, that fellow inmate Mathieu Hose had since stated that Williams admitted to stabbing a woman forty times and that the defense team was still waiting on additional forensic test results to determine if Williams was present at the crime scene. The trial court overruled the motion for a continuance. In his Rule 29.15 motion, Williams alleged that appellate counsel was ineffective for failing to raise this issue on appeal. Williams argues that the motion court clearly erred in denying this claim without an evidentiary hearing.

▮ To prevail on a claim of ineffective assistance of appellate counsel, the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it. The claimed error must have been sufficiently serious to create a reasonable probability that, if it were raised, the outcome of the trial would have been different. *Smith v. Robbins*, 528 U.S. 259, 285 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

▮ The record does not support Williams' conclusion that appellate counsel could have established that the trial court abused its discretion in overruling the motion. The decision on a motion to grant a continuance "lies within the sound discretion of the trial court." *State v. Brown*, 902 S.W.2d 278, 289 (Mo. Banc 1995). At the hearing on the supplemental motion, defense counsel conceded that the state had no intention of using Hose's statement in its case; in fact, the state did not introduce at trial any evidence regarding Hose's statements. Williams could not have been prejudiced at trial by the state's decision to not admit Hose's statement. Counsel also did not explain how forensics testing could establish that Williams was not present at the crime scene and that a continuance to collect this evidence was necessary for the defense. In any event, defense counsel presented trial testimony

from two forensics experts who testified that none of Williams' hairs were found at the crime scene and that none of his DNA was found under the victim's fingernails. Williams' allegations do not support a finding of a reasonable probability that appellate counsel could have successfully argued that the trial court erred by not granting a continuance to allow for further forensic testing. Williams' defense team had already conducted forensic tests and further tests could not establish Williams' contention that he was never present at the crime scene.

B. *Failure to raise a claim that the trial court erred in precluding expert testimony*

 Williams argues that appellate counsel was ineffective for failing to raise a claim on direct appeal that the trial court erred in not allowing him to present expert testimony during the penalty phase regarding the psychological impact on his children if he were to be executed. This Court has previously held that testimony from a murder victim's family as to the appropriate punishment is inadmissible in a capital case. *State v. Smith*, 32 S.W.3d 532, 555 (Mo. banc 2000). Likewise, this holding would likely extend to exclude testimony from the defendant's family regarding the appropriate punishment. Furthermore, every court, except one, that has considered this issue has determined that testimony regarding the impact the execution would have on family or friends is inadmissible. See, *Commonwealth v. Harris*, 572 Pa. 489, 817 A.2d 1033, 1054 (2002); *Burns v. State*, 699 So.2d 646, 654 (Fla.1997); *State v. Stenson*, 132 Wash.2d 668, 940 P.2d 1239, 1282 (1997); *People v. Sanders*, 11 Cal.4th 475, 46 Cal.Rptr.2d 751, 905 P.2d 420, 459 (1995); but see, *State v. Stevens*, 319 Or. 573, 879 P.2d 162 (1994)(holding, based upon a state statute, that the defendant's wife could testify as to whether it would be better for her and her

daughter if the defendant was executed or spent his life in prison). The motion court did not clearly err in denying this claim without an evidentiary hearing.

### IV. *Discovery during Rule 29.15 proceedings*

 Williams argues that the motion court abused its discretion in overruling his motion to compel production of Asaro's drug treatment records, Cole and Asaro's mental health and corrections records, and police reports regarding a separate murder investigation in Pagedale, Missouri. Williams argues that the motion court's ruling prejudiced his ability to advance his claim of prosecutorial misconduct. Williams' claims are without merit.

First, the state opened its files to Williams' counsel and allowed counsel to freely inspect and copy any documents from the files. If the state had withheld critical evidence and then introduced that evidence at trial, Williams' defense team would be able to identify the withheld evidence because they had previously examined the state's case file.

Second, many of the records requested, such as records from private drug treatment facilities and health care institutions, are not records that the prosecution had in its possession. The state is not required to obtain and then disclose records from other entities simply because defense counsel makes the request. Defense counsel is free to pursue discovery from third parties on essentially the same terms as the state.

Third, the probation and parole records are confidential under section 559.125, RSMo 2000. The motion court did not err in declining to order production of these records.

 Finally, the motion court did not abuse its discretion in not ordering

production of the police reports. Williams made no showing that the Pagedale murder was in any way connected with the murder for which he was tried and convicted. Evidence that someone else committed the crime is not admissible unless there is evidence directly connecting some identifiable person with the crime. *State v. Ferguson,* 20 S.W.3d 485, 507 (Mo. banc 2000).

## V. *Constitutionality of Lethal Injection*

■ Williams alleges that Missouri's lethal injection procedure is unconstitutional. He further alleges facts surrounding allegedly flawed executions in other jurisdictions and Missouri's 1995 execution of Emmett Foster. In order to state a viable claim, Williams must allege "facts that tend to show that there is a problem of administration of the death penalty by lethal injection that is likely to occur again in Missouri." *Morrow v. State,* 21 S.W.3d 819, 828 (Mo. banc 2000). This pleading requirement was not met. Williams did not allege facts showing that the protocols used in the Foster execution are still in use or will be in use if Williams is executed. Accordingly, the motion court did not clearly err in denying relief.

## VI. *Conflict of Interest*

Williams argues that the motion court clearly erred by failing to conduct a hearing on his claim that trial counsel had a conflict of interest and that counsel was ineffective for failing to obtain a hearing on this issue. The alleged conflict was that counsel was ineffective for not investigating impeachment witnesses. The motion contains no allegations as to how or why counsel was ineffective for failing to obtain a hearing on this issue. The motion court did not clearly err in overruling this claim without an evidentiary hearing.

## VII. *Rejection of Post–Conviction Counsel*

■ Rule 29.16 gives indigent capital defendants the right to reject the appointment of post-conviction counsel and provides in part that:

> If movant seeks to reject the appointment of counsel, the court *shall find on the record,* after a hearing if necessary, whether the movant is able to competently decided whether to accept or reject the appointment and whether the movant rejected the offer with the understanding of its legal consequences (emphasis added).

Williams argues that the motion court clearly erred in failing to hold an evidentiary hearing on his motion to reject post-conviction counsel and to proceed *pro se* because the court did not "find on the record" that he had competently decided to reject appointed counsel.

Williams filed two motions to reject counsel in which he alleged that he had no confidence in his appointed Rule 29.15 counsel or that his counsel was pursuing all available Rule 29.15 claims. The court directed appointed counsel to respond. The motion court considered Williams' motion, as well as the response by appointed counsel, and overruled the motion.

Rule 29.16, unlike Rule 29.15, does not expressly require detailed findings of fact and conclusions of law in ruling upon the motion. The motion court complied with Rule 29.16 by finding on the record that Williams' motion was without merit. In doing so, the court made an implicit determination that Williams was not competent to reject appointed counsel and did not understand the legal consequences of doing so. If a trial court does not make explicit findings, the appellate court presumes that the trial court made implicit findings in accordance with the result

reached. Rule 73.01. The denial of the motion was made on the record as required by Rule 29.16, and the motion court did not clearly err in overruling this claim.

### CONCLUSION

The motion court did not clearly err in overruling Williams' Rule 29.15 motion for post-conviction relief. The judgment is affirmed.

All concur.