WILLIAM W. FRANCIS, JR., J.
Brent Schwertz ("Schwertz"), appeals the judgment of the motion court denying his Rule 29.15[1] motion to set aside his convictions for first-degree murder and armed criminal action. In one point, Schwertz asserts the motion court clearly erred in denying his Rule 29.15 motion because trial counsel was ineffective for failing to investigate, research, present evidence and argue that the gun involved in the murder was a model known to be defective and to accidentally discharge. Because the motion court's decision to deny the post-conviction motion was not clearly erroneous, we affirm.
Facts and Procedural History
In reciting the facts of this matter, we view the evidence in the light most favorable to the motion court's judgment. Day v. State , 495 S.W.3d 773, 774 (Mo. App. S.D. 2016).
Schwertz's trial theory was that he shot Victim accidentally, after they had been arguing about an engagement ring Victim refused to return to Schwertz when she broke off the engagement. When Victim refused to give back the ring, Schwertz became "aggravated." Schwertz then made "the worst decision I've ever made in my entire life[,]" and retrieved a silver Bryco Jennings Model 9 semi-automatic pistol in order to scare Victim into giving back the ring. When Victim still refused to return the ring, Schwertz loaded a round into the chamber. Victim then told him to put the gun down, they would talk, and she would give him the ring. Schwertz put the gun down on a countertop, but when Victim lunged for the gun, he "grabbed the gun" and "the gun went off." Schwertz admitted his finger was on the trigger, but denied it was his intention to shoot Victim, and that it was an accident. Schwertz then called his father, telling him he had shot Victim, and asking him to call 911. Schwertz also told law enforcement that he had shot Victim.
Schwertz stated that after Victim was shot, the gun jammed. He tilted the gun sideways, shook the slide, and two cartridges fell out. He did it again, and two more cartridges fell out.
The defense called Kathleen Green ("Green"), a 23-year firearms examiner for the Missouri State Highway Patrol Crime Lab, who testified that she examined *488 Schwertz's gun and it "malfunctioned" in that "it did not chamber the cartridges consistently like it should[,]" and did not "eject the expended cartridge cases like it consistently should after each shot."
The jury found Schwertz guilty of first-degree murder and armed criminal action, and the trial court sentenced Schwertz to concurrent terms of life imprisonment without the possibility of parole, and forty years' imprisonment, respectively.
This Court affirmed Schwertz's convictions and sentences on direct appeal in a written statement. State v. Schwertz , SD32902. Mandate issued on December 24, 2014.
Schwertz timely filed his pro se Rule 29.15 motion on March 17, 2015.[2] On July 7, 2015, post-conviction counsel timely filed an amended motion. The amended motion alleged that trial counsel was ineffective for failing to "investigate, research, present evidence and argue that the weapon involved in this case is known to be defective in numerous ways including discharging without having the trigger pulled." Schwertz asserted that "[e]vidence demonstrating numerous examples of accidental discharges of this make and model of weapon would have supported [Schwertz]'s theory of accident in this case and there is a reasonable probability that the outcome of the trial would have been different." In support, Schwertz cited two articles published in The Association of Firearm and Tool Mark Examiners Journal ("AFTE Journal"), which he asserted showed that the model of Schwertz's gun was "prone to accidental discharge under various conditions." Schwertz also asserted that the manufacturer of the gun was forced into bankruptcy following a product liability suit. Schwertz concluded that such evidence could have been presented through Green, the firearms examiner who testified at trial.
On January 28, 2016, the motion court held an evidentiary hearing on the amended motion, at which Green, trial counsel, Schwertz's parents, and Schwertz testified.
Green testified she test-fired Schwertz's gun three times. The gun never fired without a trigger pull during the two years it was in the evidence locker at the Missouri Highway Patrol Crime Lab. Her analysis determined that the trigger pull of Schwertz's gun was eight and a half to nine pounds, which was normal for that gun and not considered a "hair trigger." A "hair trigger" usually indicated a trigger pull of a pound or less. Green found no reason to conduct accidental discharge testing on the gun. Green had examined the same make and model of Schwertz's gun many times before, and denied ever seeing one fire without its trigger being pulled. Green denied that the make and model of Schwertz's gun was known to discharge without having its trigger pulled.
Green also testified she was a member of The Association of Firearm and Toolmark Examiners, and had received copies of the AFTE Journal since beginning her employment at the crime lab. Green stated the AFTE Journal was "the journal for experts in my field[,]" and that experts in her field reasonably relied on the journal.
*489 Green testified that the first article cited by Schwertz, published in the summer 1999, concerned a different model than Schwertz's gun. While that article described a failure of the gun's magazine safety, the gun at issue still required a trigger pull in order to fire. The second article relied on by Schwertz, published in the spring 2001, was in regard to the same make and model as Schwertz's gun, but that article described a worn or damaged sear in two guns that caused them to function as fully automatic weapons upon a trigger pull. This defect was specific to these two particular guns, rather than a problem widely associated with the model, and that damage to the sear is often the result of having been filed down or other purposeful damage caused by the owner. Schwertz's gun was not similarly damaged, based on the fact that Green had loaded the gun with three cartridges while test-firing and "at no time did it go full auto." The lawsuit that bankrupted the manufacturer of Schwertz's gun concerned an accidental discharge of a different model than Schwertz's gun.
Trial counsel testified Schwertz told him that the shooting was an accident; Schwertz had no doubt that his finger was on the trigger, but that he accidentally shot Victim; and that Schwertz's testimony at trial was generally consistent with what he had told trial counsel. Trial counsel never investigated whether Schwertz's gun was prone to firing without its trigger being pulled because that was "never [Schwertz]'s story[;]" Green's report did not provide him with any basis to believe Schwertz's gun was prone to accidental discharge, but rather the gun's trigger pressure was within the normal range; and Schwertz never asked him to investigate the history of the model of Schwertz's gun. Trial counsel also had concerns about the relevance of evidence concerning issues with guns other than Schwertz's.
Schwertz testified he told trial counsel at their first meeting to investigate potential issues with his model of gun being prone to accidental discharge because it "just went off." Schwertz admitted he did not have any specific information regarding potential accidental discharge issues with his gun until after the conclusion of his direct appeal. Schwertz never disputed the possibility that the gun had fired due to his finger having been on the trigger.
On September 20, 2016, the motion court denied Schwertz's post-conviction motion. The motion court noted that: (1) "[t]rial counsel cannot be ineffective for failing to raise a meritless issue[ ]"; (2) Green's testimony was credible in that the model of Schwertz's gun was "not " known in the firearms community to fire without the trigger being pulled; (3) the journal articles cited by Schwertz did not support his claim as they involved different models than Schwertz's gun, involved guns that still required the triggers to be pulled in order to fire, or concerned issues with "specific guns" rather than a general model defect; (4) evidence regarding a general defect of the model of Schwertz's gun would have been irrelevant because no evidence showed that Schwertz's gun actually suffered from such a defect; and (5) trial counsel's testimony was credible in that he had no basis to investigate the possibility that Schwertz's gun was prone to accidental discharge, either as the result of Green's report or at Schwertz's direction.
In contrast, the motion court found Schwertz's testimony was not credible because he had told "witnesses, trial counsel, and the jury that he did pull the trigger and shoot the victim." The motion court concluded that Schwertz failed to prove that a witness existed at the time of trial who would have testified in accordance with Schwertz's claim, or that such testimony *490 would have been beneficial to his defense. This appeal followed.
In one point, Schwertz asserts the motion court erred in denying his Rule 29.15 motion because Schwertz established that trial counsel was ineffective in failing to investigate, research, present evidence and argue that the gun involved was a model known to be defective and to accidentally discharge.
Standard of Review
Appellate review under Rule 29.15 is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Williams v. State , 168 S.W.3d 433, 439 (Mo. banc 2005) (citing Rule 29.15(k)). "Findings and conclusions are clearly erroneous if, after reviewing the entire record, the appellate court has the definite and firm impression that a mistake has been made." Id. We defer to the motion court's credibility determinations. Bradley v. State , 292 S.W.3d 561, 566 (Mo. App. E.D. 2009).
Analysis
Schwertz argues that trial counsel should have investigated whether the gun was defective due to spontaneous discharge, or because of a "hair trigger" on the gun.
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.
Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S.Ct. 2052. "Judicial scrutiny of counsel's performance must be highly deferential.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689, 104 S.Ct. 2052.
Second, the defendant must show prejudice from his counsel's deficient conduct. Id. at 687, 104 S.Ct. 2052. To satisfy this burden, a claimant must show a reasonable probability that but for trial counsel's defective performance, demonstrated in the first component, the outcome at trial would have been different. Id. at 694, 104 S.Ct. at 2068.
Here, Schwertz's Rule 29.15 motion claimed that trial counsel was ineffective based on trial counsel's failure to investigate and present evidence that the gun in this case was defective, in that the gun was "prone to accidental discharge," "including discharging without having the trigger being pulled."
A claim for ineffective assistance of counsel based on counsel's alleged failure to investigate will be successful only if the movant can show: (1) that counsel's failure to investigate was unreasonable and (2) that the movant was prejudiced as a result of counsel's unreasonable failure to investigate.
Barton v. State , 432 S.W.3d 741, 759 (Mo. banc 2014). "Trial counsel will not be deemed ineffective for pursuing one reasonable trial strategy over another." Tisius v. State , 519 S.W.3d 413, 425 (Mo. banc 2017). "Trial counsel's decision not to pursue [an] issue ... after a thorough investigation of the law and facts ... is virtually unchallengeable." Roberts v. State , 502 S.W.3d 734, 738 (Mo. App. W.D. 2016).
*491 Trial counsel's theory of the case was that Schwertz had pulled the trigger of the gun by accident, without meaning to shoot Victim. Trial counsel's credited testimony at the post-conviction hearing was that he did not investigate whether the gun had a "hair trigger" or could fire without the trigger being pulled, because this was "never [Schwertz]'s story[.]" Rather, Schwertz had told trial counsel that he had gotten the gun out to scare Victim into giving his engagement ring back, that he and Victim reached for the gun at the same time, and that he shot Victim when he "pulled the trigger by accident[.]"
The credited testimony at the motion hearing demonstrates that the issue of "the gun going off by itself or having [a] hair trigger," never came up in trial counsel's investigation of the case or discussions with Schwertz. Schwertz never told trial counsel that he did not pull the trigger. In fact, Schwertz called his father after the shooting and said he had shot Victim; he also told police he had shot Victim; and he testified at trial that "there was no doubt he had shot [Victim,]" and that his finger had been on the trigger. The motion court found trial counsel's testimony credible, noting that Schwertz had told "witnesses, trial counsel, and the jury that he did pull the trigger and shoot the victim."
Trial counsel put Green on the stand to corroborate Schwertz's story that he had problems with the gun after Victim was shot. When Green tested Schwertz's gun, it "malfunctioned" in that "it did not chamber the cartridges consistently like it should[,]" and did not "eject the expended cartridge cases like it consistently should after each shot."
Trial counsel did not investigate whether the gun had a "hair trigger" or went off without the trigger being pulled because nothing in Schwertz's version of events or Green's report indicated that this would be helpful. Trial counsel's strategic decision to pursue an investigation and defense based on Schwertz accidentally pulling the trigger, as opposed to the gun having a defective "hair trigger" or firing spontaneously, was not unreasonable, and was not ineffective assistance of counsel. Tisius , 519 S.W.3d at 425.
Further, as the motion court correctly indicated, Schwertz failed to demonstrate that the investigation of such a defense would have been helpful:
22. Kathleen Green testified that the Bryco Jennings Model Nine is not known in the firearms community to fire without the trigger being pulled. She testified that she had seen and tested many Bryco Jennings Model Nine handguns in her lab and had never seen one fire without the trigger having been pulled. She testified that most of the time the Model Nines function without complication, but on occasion they fail to properly chamber rounds. This Court found her testimony credible.
23. The articles to which [Schwertz] cites for the proposition that Model Nines are known to discharge without the trigger being, pulled, the AFTE Journals for Summer 1999 and Spring 2001, do not support his claim. The Summer 1999 article regards a Model 59, a different weapon than the one used in this case. That article was about a malfunction on the magazine safety and the trigger would still need to be pulled to make the gun fire. While the Spring 2001 article is about the Model Nine, it discusses two specific guns with a combination of a worn sear and another problem. Even in the case of the two specific guns discussed, the trigger would still need to be pulled to make the gun fire. The 2003 product liability suit to which [Schwertz] refers is also irrelevant, as *492 the gun at issue in that case was a Model 38.
24. Even if the Model Nine was known to be defective and even if that defect caused the weapon to discharge without the trigger being pulled, evidence of such a defect would still be irrelevant to this case, as the murder weapon was seized and tested. This gun never, in the two years it was in possession of the lab, fired without the trigger being pulled and, in fact, struggled to chamber rounds and eject casings. Kathleen Green found the trigger pull on the murder weapon to be 8.5 to 9 pounds, which is within the normal range for the weapon and by no means qualified as a 'hair trigger.' While she did not specifically test the gun for accidental discharge, she had no reason to suspect, from her examination, that such a test was necessary.
(Emphasis in original) (Internal references to the transcript and exhibits are omitted).
Schwertz was not prejudiced by trial counsel's strategic decision not to investigate or present such evidence. Barton , 432 S.W.3d at 759.
The motion court did not clearly err in rejecting Schwertz's Rule 29.15 motion. Point denied. The judgment of the motion court is affirmed.
NANCY STEFFEN RAHMEYER, C.J./P.J.-Concurs
DANIEL E. SCOTT, J.-Concurs

All rule references are to Missouri Court Rules (2017).

Pursuant to Moore v. State , 458 S.W.3d 822, 825 (Mo. banc 2015), this Court must examine whether the motion for post-conviction relief was timely filed even if the issue is not raised by the parties. Because Schwertz filed a direct appeal, his pro se motion was due within 90 days from the date the mandate was issued in his direct appeal. See Rule 29.15b. The mandate was issued on December 24, 2014. On April 8, 2015, the motion court appointed the public defender to represent Schwertz on his post-conviction motion. The motion court subsequently granted a 30-day extension to file an amended motion, as permitted under Rule 29.15(g).