Kristopher M. PRINCE, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 74478.

Missouri Court of Appeals, Western District.

Jan. 15, 2013.

M. Ruth O'Neill, Columbia, MO, for appellant.

Chris Koster, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, for respondent.

Before Division Two: LISA WHITE HARDWICK, Presiding Judge, and JAMES M. SMART, JR., and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

Kristopher M. Prince appeals, after an evidentiary hearing, the denial of his post-conviction Rule 29.15 motion.[1] Prince argues that the motion court clearly erred in denying his claims of ineffective assistance of trial counsel based on trial counsel's alleged failure to: (1) investigate evidence related to Prince's mental health and functioning; (2) request a change of judge at trial based upon the trial judge's acquaintance with Prince's grandfather; and (3) request a no-adverse-inference instruction

---

1. Rule citations are to Missouri Court Rules (2012), unless otherwise noted.

following Prince's decision not to testify in his penalty phase. Prince also argues motion court error in: (1) denying his change of judge motion; and (2) adopting the State's proposed findings of fact and conclusions of law. Finding no error of law, we affirm.

## Factual Background

On April 12, 2007, Prince and his cousin, Lorenzo Ladiner, bought an assault rifle for the purpose of robbing a local drug dealer, Larry McBride. They stored the rifle at Ladiner's home. Later that same day, Ladiner was pulled over and arrested on an outstanding warrant. The next day, when Prince went to post bail for Ladiner, Prince was arrested on an outstanding warrant. From April 13[th through the] 18th, 2007, Prince remained in custody at the Boone County jail. During his confinement, Prince made several phone calls to Ladiner in which they discussed their plans to assault and rob McBride.

While Prince was in custody, Ladiner fired shots at McBride's vehicle. When Prince was released, he went to Ladiner's house. McBride [later] pulled up to the house with Tedarrian Robinson and Carlos Dudley [in the vehicle]. McBride accused Ladiner of shooting at his house[, and this accusation] led to a heated verbal exchange. Prince attempted to open McBride's door, [but] McBride drove off.

Prince and Ladiner ran inside Ladiner's house. Prince grabbed the assault rifle[,] and Ladiner grabbed the car keys to chase after McBride. When they caught up with McBride, Prince leaned out the passenger window and fired at least five shots at McBride's vehicle. One bullet pierced the trunk of McBride's vehicle, traveled through the rear seat to the front passenger head-rest, and struck Robinson in the neck. Prince and Ladiner returned to Ladiner's house and hid the rifle in the attic. McBride drove toward the hospital. Dudley called the police and reported that Prince was the shooter. The police pulled McBride over and took Robinson to the hospital where he was pronounced dead.

Police responded to Ladiner's house and arrested both Ladiner and Prince. Prince was charged with murder in the second degree, section 565.021 (felony murder), unlawful use of a weapon by shooting a firearm from a motor vehicle, section 571.030.1(9), and armed criminal action, section 571.015.... A jury found Prince guilty on all three counts. Prince was sentenced to consecutive sentences of thirty years for felony murder, fifteen years for unlawful use of weapon, and five years for armed criminal action.

State v. Prince, 311 S.W.3d 327, 330 (Mo. App. W.D.2010). This Court affirmed Prince's convictions and sentences on direct appeal. *Id.* at 340.

Prince subsequently filed a *pro se* Rule 29.15 motion. Appointed counsel filed an amended motion, alleging the following relevant claims of ineffective assistance of trial counsel: (1) counsel failed to investigate Prince's mental disability; (2) counsel unreasonably failed to request a no-adverse-inference instruction based upon Prince's decision not to testify in either the guilt or penalty phases of his trial; and (3) counsel failed to request a change of judge based upon the court's familiarity with Prince's grandfather. Prince also filed a motion for change of judge for the evidentiary hearing based upon both the motion court's familiarity with Prince's grandfather and Prince's claim of ineffective assistance of counsel related to the failure to request a change of judge at trial for the same reason; that motion was denied.

The motion court held an evidentiary hearing wherein it received testimony from Prince, Prince's mother, Prince's grandmother, Prince's grandfather, both trial attorneys, the Deputy Director of the Public Defender System, and a licensed clinical social worker that treated Prince when he was eleven or twelve years old. The motion court also received the following evidence: three documents related to the caseload of the Public Defender's Office, two documents related to Prince's juvenile matter in Minnesota, a letter from one of Prince's past treatment providers, and a progress report from the licensed clinical social worker that treated Prince when he was a child. Thereafter, the motion court solicited proposed findings of fact and conclusions of law from both parties. The court then adopted the State's proposed findings and conclusions, over Prince's objection, and overruled Prince's Rule 29.15 motion. Prince appeals.

## Standard of Review

■ " 'Appellate review of a motion court's denial of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether its findings of fact and conclusions of law are clearly erroneous.' " *Hendrix v. State*, 369 S.W.3d 93, 96 (Mo. App. W.D.2012) (quoting *Williams v. State*, 205 S.W.3d 300, 304 (Mo.App. W.D. 2006)); *see also* Rule 29.15(k). "Findings of facts and conclusions of law are 'clearly erroneous only if, after review of the entire record, we are left with a definite and firm impression that a mistake has been made.' " *Id.* (quoting *Williams*, 205 S.W.3d at 305).

■ Prince asserts error not only in the overruling of his post-conviction motion but also in the denial of his motion for change of judge in his post-conviction case. "A denial of an application for change of judge is reviewed for abuse of discretion."

*Burgess v. State*, 342 S.W.3d 325, 328 (Mo. banc 2011). " 'A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.' " *State v. Ferdinand*, 371 S.W.3d 844, 850 (Mo. App. W.D.2012) (quoting *State v. Scott*, 348 S.W.3d 788, 794 (Mo.App. S.D.2011)).

## Analysis

Prince raises three claims of ineffective assistance of counsel and two claims of independent motion court error. Prince argues that trial counsel rendered ineffective assistance in the following ways: (1) failing to investigate and present evidence related to Prince's mental health and mental functioning for the purpose of mitigation during the penalty phase; (2) failing to request a change of judge based upon the trial court's familiarity with Prince's grandfather; and (3) failing to request a no-adverse-inference instruction during the penalty phase of Prince's trial after Prince decided not to testify. Prince argues that the motion court erred not only in overruling his claims of ineffective assistance of counsel but also in denying his post-conviction motion for change of judge and in adopting the State's proposed findings and conclusions verbatim.

## I. Claims of ineffective assistance of trial counsel

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components." *Id.*

at 687, 104 S.Ct. 2052. The defendant must demonstrate both deficient performance and resulting prejudice to the defense. *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700, 104 S.Ct. 2052.

## A. Investigation of mental health and functioning evidence

Prince's first claim of ineffective assistance charged trial counsel with deficient performance for failing to investigate evidence demonstrating that Prince had been "plagued" with mental health issues since he was a child and for then failing to present such evidence at the penalty phase of Prince's trial.[2] Prince alleged that, had this evidence been discovered and presented, it would have mitigated the punishment ultimately assessed by the jury.

The motion court rejected this claim for several reasons. The court first found that Prince failed to prove that he had the various mental health issues he alleged. Second, the court found that counsel had no reason to believe that Prince suffered from any mental conditions that warranted further investigation; thus, counsel did not act unreasonably in not further investigating Prince's mental health. Third, the court found that even if the mental health evidence identified at the evidentiary hearing was placed before the jury, there was no reasonable likelihood that Prince would have received a lower sentencing recommendation. In fact, the motion court found that this evidence may have had the effect of aggravating the jury's recommendation. These findings are not clearly erroneous.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of

**2.** Prince's amended motion accused counsel of rendering ineffective assistance in this regard at both the guilt and penalty phases. It is not clear from Prince's opening brief whether his first point on appeal is intended to address counsel's alleged ineffectiveness in the guilt phase of trial. In his first point on appeal, Prince argues that, had mental health and low IQ evidence been presented for purposes of mitigation in the *sentencing phase,* there is a reasonable probability that the jury would have recommended a lesser sentence. He also claims that this evidence could have been presented to refute claims that he was "directing the activity at the time of the killing," but he does not explain how this is relevant to either the guilt or penalty phase. "Directing the activity at the time of the killing" is not an element of felony murder, unlawful use of a weapon, or armed criminal action—the charges for which Prince was found guilty, and, thus, it is unclear how

"refuting" this claim would have any bearing on the guilt phase of the trial. The State's brief treats Prince's claim as challenging counsel's actions at the penalty phase only, and Prince adopts this characterization in his reply brief. Similarly, during oral argument, Prince's counsel addressed only alleged ineffectiveness of counsel during the penalty phase of trial. Consequently, we will address only those arguments related to counsel's conduct at the penalty phase of Prince's trial. That being said, even if we were to address counsel's effectiveness at the guilt phase, we would find Prince's arguments unpersuasive insofar as he failed to demonstrate that the evidence counsel allegedly should have discovered would have provided him with a viable defense to the charges, as it would not have negated any elements of the charged crimes. *See Rios v. State,* 368 S.W.3d 301, 307 (Mo.App. W.D.2012).

deference to counsel's judgments." *Id.* "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing." *Wiggins v. Smith*, 539 U.S. 510, 533, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

### 1. Evidence pertaining to Prince's mental health

At the evidentiary hearing, Prince presented evidence that Marianne Branham, a licensed clinical social worker, had treated him beginning in March 2001, when he was eleven years old, due to anger issues resulting from a stressful home environment and the murder of his aunt. Branham indicated that, although children in similar situations are treated as if they have post-traumatic stress disorder (PTSD), Prince did not meet the diagnostic criteria for PTSD; accordingly, she could not diagnose him with PTSD. Branham did, however, diagnose Prince with adjustment disorder with mixed emotion and conduct, along with severe stress from his home environment. Branham described Prince as "bright" with "a lot of potential." The last time Branham saw Prince in a clinical setting was November 27, 2002. Branham indicated that she had no ability to testify about what effect, if any, the issues Prince had at that time would have had on his commission of the charged crimes.

Prince also presented a letter from Dr. Michael Scott, a psychologist that met with Prince on four occasions in 2003. Dr. Scott provisionally diagnosed Prince with Attention Deficit/Hyperactive Disorder and Oppositional Defiant Disorder. Dr. Scott suspected that Prince might have a mood disorder and commented that Prince might have been diagnosable with PTSD, but he did not render that diagnosis. Dr. Scott did not testify at the evidentiary hearing.

Prince presented a transcript from his juvenile proceedings in Minnesota, along with a psychological report generated in that case that was not part of the Minnesota Public Defender's case file. The transcript indicated that Prince's mother, out of concerns about Prince's mental health, had set up therapy treatments for him with Dr. Scott upon Prince's return, and she further intended to have Prince evaluated and treated, if necessary, for chemical dependency. The psychological report indicated that during his interview with the reporting psychologist, Prince appeared amused and was smirking until he was advised that the report would be used to determine the disposition of his juvenile matter and that it would include behavioral observations. The report indicated that Prince had received relatively good grades while in school, had never participated in special education, and had contemplated attending college after high school. The psychologist administered several psychological tests, including intelligence tests, on Prince. Although his scores on the intelligence tests were on the low end of the borderline range of functioning, the report also indicated that Prince exhibited low motivation and effort on these tests and that, therefore, the results might underestimate his actual abilities. On a different psychological assessment, the results indicated that Prince matched the profile for a Pragmatist (Manipulator), meaning that he tended to "focus on power and control" and tended to "be seen as adventurous, [a] risk-taker[ ], and accepting." The report offered a deferred diagnosis for Adjustment Disorder with Anxiety or Anxiety Disorder NOS, but no other psychological diagnoses. The report also characterized Prince as "highly culpable" in relation to his charge and indicated that he did not

appear to have "significant therapeutic issues."

Trial counsel, Michael Byrne, testified that he was not aware of Prince having mental or emotional problems, and, contrary to Prince's mother's testimony, Byrne indicated that she never gave him any information from Branham, Dr. Scott, or Prince's Minnesota juvenile proceedings. Byrne was aware, however, of Prince's juvenile proceedings from discovery he had obtained from the State. Byrne acknowledged that the transcript from that proceeding mentioned something about treatment and chemical dependency, but he denied any familiarity with the psychological report.[3] Byrne testified that he did not feel compelled to investigate any further into Prince's mental health because "in all [his] interactions with [Prince], ... [Prince] never gave [him] cause to think that there were mental health issues." Byrne indicated that if he had any reason to believe that mental health issues were present, he would have pursued them if he believed they could have helped mitigate Prince's sentence.

Co-counsel, Kevin O'Brien, testified that he and Byrne never discussed Prince having any mental health issues. Like Byrne, O'Brien testified that he had never seen the letters from Branham and Dr. Scott. O'Brien agreed that Prince's intelligence testing scores in the Minnesota psychological report could have been mitigating.

### 2. Failure to investigate mental health evidence

Prince argues that counsel "fail[ed] to investigate credible evidence of mental illness and mental retardation or borderline intellectual functioning," and that Prince was thereby prejudiced insofar as this evidence could have been presented during his penalty phase, where the jury "may well have used this information to mitigate the sentence they recommended in his case."

■■■ "Trial counsel is afforded wide latitude in preparing for and conducting a defense." *Cornelious v. State*, 351 S.W.3d 36, 46 (Mo.App. W.D.2011). "To prevail on a claim of ineffective assistance of counsel for failure to investigate, a movant is required to allege what information plea counsel failed to discover, that a reasonable investigation would have resulted in the discovery of such information, and the information would have aided and improved the defense." *Bliss v. State*, 367 S.W.3d 190, 195 (Mo.App. S.D.2012). Additionally, when dealing specifically with mental health evidence, a movant must demonstrate that counsel had some reason to investigate the movant's mental health based either upon information provided to counsel by the movant or upon counsel's own observations of the movant. *See Strickland*, 466 U.S. at 691, 104 S.Ct. 2052 (discussing information provided to counsel by the defendant); *Nelson v. State*, 372 S.W.3d 892, 895–96 (Mo.App. E.D.2012) (discussing counsel's observations of and interactions with the defendant); *Gooch v. State*, 310 S.W.3d 275, 280–81 (Mo.App. S.D.2010) (also discussing counsel's observations of and interactions with the defendant).

Here, Prince's claim fails for two reasons: first, he failed to demonstrate that counsel had any reason to investigate his mental health; and, second, he failed to demonstrate that the evidence counsel allegedly should have discovered would have aided or improved his position at the penalty phase.

---

**3.** Prince's post-conviction counsel stated at the hearing that the psychological report had not been contained in the Minnesota Public Defender's file.

### 3. Counsel's performance was not deficient

The motion court did not err in finding that counsel had no reason to consider further investigation of Prince's mental health, as the evidence supported a finding that Prince failed to provide them with any specific information about his mental health and did not give the outward appearance of having any mental health issues. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.* Both Byrne and O'Brien testified contrary to Prince's mother, indicating that she never provided them with any information from Branham, Dr. Scott, or Prince's Minnesota juvenile proceedings. Furthermore, Byrne indicated that, while there was brief mention of treatment and chemical dependency in the discovery materials he received from the State, he never knew of the psychological report presented at the evidentiary hearing,[4] and he felt no need for independent evaluation because "in all [his] interactions with [Prince], . . . [Prince] never gave [him] cause to think that there were mental health issues." Byrne indicated that if he had any reason to believe that mental health issues were present, he would have pursued them if he believed they could have helped mitigate Prince's sentence. O'Brien supported Byrne's testimony. Based on this evidence, there was no reason for counsel to further investigate Prince's mental health. And because there was no reason provided, either directly by Prince or indirectly

through his conduct, counsel's decision not to pursue this investigation was reasonable. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard,* 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); *see also Johnson v. State,* 388 S.W.3d 159, 165 (Mo. banc 2012); *Strong v. State,* 263 S.W.3d 636, 652 (Mo. banc 2008).

### 4. Prince failed to demonstrate any resulting prejudice

Even if counsel had conducted further investigation, discovered all of the evidence that Prince presented at the evidentiary hearing, and then presented that evidence to the jury during the penalty phase, it is not reasonably probable that the jury would have recommended a lesser sentence. Contrary to his arguments, there was no evidence that Prince had actually been diagnosed with PTSD, and the evidence of borderline intelligence was questionable at best. The only evidence of mental illness presented consisted of possible personality disorders, and the only evidence of impaired mental functioning was qualified by the fact that it likely did not represent Prince's true abilities due to his lack of motivation and effort during the evaluation that yielded the results. There was no evidence indicating that Prince had diminished cognitive abilities; on the contrary, one of Prince's witnesses indicated several times that he was a very bright individual with the potential to succeed. "Where personality disorders do not affect cognitive abilities, their mitigating value is doubtful." *Zink v. State,* 278 S.W.3d 170, 182 (Mo. banc 2009).

---

4. *See supra* note 3.

Not only is the mitigating value of this evidence doubtful, it also had the potential for an aggravating effect. The psychological report identified Prince as manipulative, highly culpable, and in search of power and control. All of these things could have had an aggravating effect on the jury's recommended punishment. "Commentators have noted the double-edged nature of such evidence, finding that many jurors hold a 'presumption of an absolute linkage between mental illness and dangerousness.'" *Vaca v. State*, 314 S.W.3d 331, 337 n. 4 (Mo. banc 2010) (quoting Michael L. Perlin, *The Sanest Lives of Jurors in Death Penalty Cases: The Puzzling Role of Mitigating: Mental Disability Evidence*, 8 Notre Dame J.L. Ethics & Pub. Pol'y 239, 258 (1994)).

In *Darden v. Wainwright*, 477 U.S. 168, 169, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), the Supreme Court denied a claim of ineffective assistance of counsel for failing to present mental health evidence during the penalty phase. The Court determined that, had the evidence at issue been presented, it would have opened the door to damaging evidence; thus, counsel's decision not to pursue it was reasonable. *Id.* at 186–87, 106 S.Ct. 2464.

Here, even though counsel was unaware of the psychological report from Minnesota, had they known, it would have been reasonable for counsel not to introduce it, as it likely would have caused more harm than good for Prince's defense. And, in light of that prospect, we cannot say that there is a reasonable probability of a different outcome had the evidence been presented. Thus, Prince has failed to demonstrate any prejudice from counsel's alleged failure.

Prince makes a variety of arguments to support his claim, but none of them are availing. Prince first relies on *Vaca v. State*, 314 S.W.3d 331 (Mo. banc 2010), to argue that counsel was ineffective for failing to present mental health evidence in mitigation at his penalty phase. In *Vaca*, counsel acknowledged that he was fully aware of the defendant's fairly serious mental health issues (schizophrenia and a history of head injury), but he wholly failed—without reason—to consider offering mental health evidence in mitigation at the defendant's penalty phase. *Id.* at 336. After first noting that "the submission of mental health history, subject to counsel's strategic judgment, is a viable defense during a bifurcated sentencing phase," the Court determined that the case before it was "not a case where counsel failed to investigate the existence of a mental illness." *Id.* Rather, the case involved counsel's complete and unjustified failure to *consider* using known and available evidence of mental health history in mitigation at the defendant's penalty phase. *Id.* at 336–37 ("[t]he holding of this case is not that counsel was ineffective for not calling Dr. Geis. Rather, this case rests on the fact that the question of whether to call Dr. Geis was never considered.").

Here, unlike in *Vaca*, counsel was unaware that Prince had any significant mental health history; and, in fact, unlike the evidence in *Vaca*, the mental health evidence Prince offered was insignificant in the sense that it is not reasonably probable that it would have mitigated Prince's punishment had it been provided to the jury. Thus, *Vaca* does not aid Prince's claim.

 Prince next argues that "[d]ue to the caseload crisis and financial issues in the public defender system at the time that [Prince's] case was tried, his attorneys had not been provided training in how to conduct a bi-furcated sentencing trial in a non-capital case," and that this lack of proper training necessarily resulted in ineffective assistance. In response, the State correctly points out that, while an

excessive caseload could, in some circumstances, lead to potentially deficient performance, "*Strickland* still requires that the defendant 'identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.'" (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). Merely identifying a lack of training in an area does not lead to an inescapable conclusion that counsel's performance in that area was necessarily deficient. *See Johnson v. State*, 693 N.E.2d 941, 953 (Ind.1998) ("Irrespective of whether there were problems with the public defender system, in order to claim ineffective assistance of counsel, [the defendant] must show that his trial counsel provided deficient performance and that it was prejudicial."). As the Court in *Strickland* noted, "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. "The purpose is simply to ensure that criminal defendants receive a fair trial." *Id.*

Here, trial counsel testified that, although there were times that his caseload was excessive, he "gave each and every one of [his] clients appropriate representation." Counsel could not recall any trial where he felt that he proceeded while unprepared. Counsel testified that he had experience not only with conducting bifurcated trials but also with using mental health evidence in mitigation of punishment. Thus, the fact that he had not received any specific training on the presentation of mental health evidence in mitigation during a penalty phase does not meet Prince's burden, particularly in light of the facts that counsel was well aware of both the potential use of mitigating evidence and the purposes of a separate penalty phase. Prince's claim that counsel's lack of training directly established ineffective assistance of counsel is without merit.

Point I is denied.

### B. Motion for change of judge

■ Prince's second claim of ineffective assistance charges counsel with deficient performance in failing to seek a change of judge based upon the trial court's familiarity with Prince's grandfather. Prince claims that he was prejudiced because the trial court used its knowledge of outside information from its acquaintance with Prince's grandfather when sentencing Prince. We disagree.

At the sentencing hearing, before pronouncing sentence, the trial court made the following comments to Prince:

I did read that letter you wrote me, and I read a lot of letters. You had a lot of letters that people wrote you—on your behalf. And they're well-meaning people.

You do have a lot of people that love you. I knew—I still do know and consider [myself] friends with your granddad, June. Worked with him on the street department. Good guy. He obviously loves you. He went through adversity in his life, but he handled it a lot differently. And I think truth be known, your problem is: You didn't take individual responsibility for your actions, even though you had a lot of people loving you, like your mom and your grandparents.

At the evidentiary hearing, trial counsel testified that he, Prince, and Prince's family had discussed the possibility of seeking a change of judge, but they opted not to do so because they did not want to risk drawing a different judge. Counsel testified that he did not believe he ever had cause

to support a change of judge motion based upon bias or prejudice.

 "Whether to file a motion to disqualify a judge is a matter of trial strategy." *State v. Ayers,* 911 S.W.2d 648, 652 (Mo.App. S.D.1995). "Counsel is afforded broad latitude as to questions of trial strategy." *State v. Hamilton,* 892 S.W.2d 774, 784 (Mo.App. S.D.1995). "A court will not find ineffective assistance where the conduct complained of by the accused involves counsel's use of reasonable discretion in a matter of trial strategy." *Id.*

Furthermore, this was a strategy with which Prince apparently agreed. Thus, he has no room to now complain that this strategy somehow failed. *See State v. Collier,* 892 S.W.2d 686, 693–94 (Mo.App. W.D.1994) (rejecting a claim of ineffective assistance of counsel for stipulating to certain evidence where defendant agreed with the decision to stipulate).

This part of Point II is denied.[5]

**C. No-adverse-inference instruction**

 Prince's final claim of ineffective assistance of counsel alleges that counsel rendered deficient performance by failing to offer a no-adverse-inference instruction (advising the jury not to draw an adverse inference from defendant's decision not to testify) during the penalty phase of the trial after Prince opted not to testify. He argues that he was prejudiced because, had the jury been given this instruction, it "could have affected the outcome of the case."

There are several problems with Prince's argument. First, counsel considered and rejected the possibility of requesting the no-adverse-inference instruction—a decision with which Prince agreed.

And second, Prince has not alleged and cannot demonstrate prejudice from counsel's decision.

 The Missouri Supreme Court "has recognized that submission of the no-adverse inference instruction is optional." *Barnett v. State,* 103 S.W.3d 765, 773 (Mo. banc 2003) (citing MAI–CR 3d 308.14, Notes on Use 2; and *Knese v. State,* 85 S.W.3d 628, 635 (Mo. banc 2002), as "holding that it is reasonable for counsel to forego requesting the instruction, believing that it highlights the fact that the defendant did not testify"). " 'An objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel.' " *Oplinger v. State,* 350 S.W.3d 474, 477 (Mo.App. S.D. 2011) (quoting *Love v. State,* 670 S.W.2d 499, 502 (Mo. banc 1984)).

Here, counsel's decision not to submit the instruction in the penalty phase was plainly a matter of trial strategy. Counsel testified at the evidentiary hearing that he typically chooses not to request the no-adverse-inference instruction because "it was perceived that it highlighted the failure to testify." The record from the trial, itself, reflects that Prince was advised of his option to request the instruction, but he chose not to have it—at either the guilt or the penalty phase.

As counsel suggested, "[t]he 'no-adverse inference' instruction can serve to call the jury's attention to the defendant's decision not to testify, which can, by itself, result in a negative inference directed towards the defendant." *Christeson v. State,* 131 S.W.3d 796, 800–01 (Mo. banc 2004). Consequently, counsel's decision not to request the instruction is a matter of reasonable

---

**5.** Prince's second point on appeal asserts error both in the denial of his claim of ineffective assistance and in the denial of his post-conviction motion for change of judge. The denial of the change of judge motion will be addressed below.

trial strategy. *See State v. Naumowicz,* 923 S.W.2d 482, 487 (Mo.App. E.D.1996).

Prince has failed to demonstrate not only deficient performance but also resulting prejudice in that "[t]he omission of this optional instruction fails to establish prejudice cognizable by *Strickland." Barnett,* 103 S.W.3d at 773.

Because he failed to prove either deficient performance or resulting prejudice, Prince's claim of ineffective assistance of counsel is without merit.

Point III is denied.

## II. Claims of independent motion court error

Prince raises two claims of motion court error independent of the claims raised in his amended motion. First, he claims that the motion court erred in overruling his motion for change of judge at the post-conviction stage. Second, he argues that the motion court erred in adopting, verbatim, the State's proposed findings of fact and conclusions of law.

### A. Change of judge motion

■ At the post-conviction stage, Prince filed a motion for change of judge on the same basis he claims counsel should have asserted at the trial—that the trial court's familiarity with Prince's grandfather rendered the court unfair.

■ "Rule 51.05, governing the procedure for change of judge, does not apply in a Rule 24.035 proceeding; however, due process concerns allow a movant to disqualify a judge on the grounds that the judge is biased and prejudiced against the movant." *Burgess v. State,* 342 S.W.3d 325, 328 (Mo. banc 2011). "A 'disqualifying bias or prejudice must be one emanating from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learns from participation in the case.'" *Id.* (quoting

*Haynes v. State,* 937 S.W.2d 199, 202 (Mo. banc 1996)). We generally presume " 'that a judge acts with honesty and integrity and will not preside over a trial in which he or she cannot be impartial.' " *Id.* (quoting *Worthington v. State,* 166 S.W.3d 566, 579 (Mo. banc 2005)).

Here, Prince sought to disqualify the motion court judge because he was a potential witness in the Rule 29.15 case due to Prince's allegation that counsel was ineffective for failing to move for change of judge at trial, where the same judge presided. Although the allegation that a judge is a material witness is commonly recognized as an extrajudicial source providing the basis for disqualification, *Haynes,* 937 S.W.2d at 202, Prince never alleged that he intended to use testimony from Judge Crane (the judge presiding over both trial and post-conviction) to prove the claim of ineffective assistance of counsel he alleged in his amended motion. Thus, it appears that the basis for Prince's post-conviction motion for change of judge was specious at best.

In any event, the evidence regarding Judge Crane's relationship with Prince's grandfather demonstrates that any potential bias—which we do not agree exists— would have served only to favor Prince, as Judge Crane was apparently fond of and thought highly of Prince's grandfather. Furthermore, Prince has failed to allege what effect, if any, Judge Crane's relationship with Prince's grandfather had on the outcome of his post-conviction proceedings.

The second part of Point II is denied.

### B. Adopting the State's proposed findings and conclusions

■ Prince's final claim of error is that the motion court clearly erred in adopting, verbatim, the State's proposed findings of

fact and conclusions of law. This claim is not preserved for review.

"In all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review." Rule 78.07(c). Here, while Prince objected, he did not file a motion to amend the judgment as required for preservation by Rule 78.07(c). Thus, this claim is not preserved.

A gratuitous review of the claim, however, reveals that it is without merit. The Missouri Supreme Court addressed this same claim in *State v. Ferguson*, 20 S.W.3d 485, 510 (Mo. banc 2000). There, the Court held that "[i]n the absence of independent evidence that the court failed to thoughtfully and carefully consider the claims, 'there is no constitutional problem with the court adopting in whole or in part the findings of fact and conclusions of law drafted by one of the parties.'" *Id.* (quoting *State v. Kenley*, 952 S.W.2d 250, 261 (Mo. banc 1997)).

Here, Prince has wholly failed to identify any independent evidence demonstrating that "the court failed to thoughtfully and carefully consider" each of his claims. Although the process of signing off on one party's proposed findings and conclusions may create a "problem with the appearance," the submission of proposed findings and conclusions can be "useful to the court in focusing on the crucial issues in a case...." *State v. Griffin*, 848 S.W.2d 464, 471–72 (Mo. banc 1993). "Given the law of this state and this country on ineffective assistance of counsel, there will be times when the state's proposal will be correct in all details." *Id.* at 472. This is the situation in which Prince finds himself. Consequently, even if this claim were preserved, we would find no error in the motion court's adoption of the State's proposed findings of fact and conclusions of law.

Point IV is denied.

## Conclusion

The motion court's findings of fact and conclusions of law are not clearly erroneous. Additionally, the motion court committed no error either in denying Prince's motion for change of judge or in adopting the State's proposed findings of fact and conclusions of law. The judgment is affirmed.

LISA WHITE HARDWICK, Presiding Judge, and JAMES M. SMART, JR., Judge, concur.