

# *In the*
# *Missouri Court of Appeals*
## *Western District*

| | | |
|---|---|---|
| **LARNELL McDONALD,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD86768** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **MARCH 25, 2025** |
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable James F. Kanatzar, Judge

Before Division One:  Gary D. Witt, Presiding Judge, Lisa White Hardwick, Judge and
Edward R. Ardini, Jr., Judge

Larnell McDonald, Jr. ("McDonald") appeals a judgment from the Circuit Court of

Jackson County, Missouri ("motion court"), denying, after an evidentiary hearing, his

motion for post-conviction relief pursuant to Rule 29.15.[1]  McDonald raises three points

on appeal and argues the motion court clearly erred in denying his motion for post-

conviction relief because McDonald's trial counsel ("Counsel") was ineffective because

Counsel:  Point I, failed to elicit additional testimony from K.P.[2] at the sentencing

hearing;  Point II, failed to elicit additional testimony from M.M. at the sentencing

---

[1] All Rule references are to the Missouri Supreme Court Rules (2024).
[2] Pursuant to section 509.520, RSMo. (2023), we do not use any witness names other
than parties in this opinion.

hearing; and Point III, failed to investigate and retain a mental health expert. Finding no error, we affirm the judgment of the motion court.

## Factual and Procedural Background

McDonald was charged with one count of the class A felony of murder in the second degree, and one count of the unclassified felony of armed criminal action for events that took place on August 16, 2020. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following:

On August 16, 2020, at approximately 9:45 p.m., Victim sent a text message to her Brother, asking him to call the police and send them to her house. In the text, Victim told Brother that her husband, McDonald, was threatening her. A few minutes later, Victim texted Brother again informing him that McDonald had just "smacked" her, and McDonald told Victim that when she goes to sleep she "better lock [the] door." Brother called 911 and then drove to Victim's house. Police officers had already arrived at Victim's house by the time Brother got there.

The responding officers approached Victim's house, preparing to knock on the front door, when they heard a single gunshot. The officers retreated from the residence, notified dispatch, and waited for additional officers to arrive. Once additional officers arrived, the officers planned to approach and enter the residence. Prior to entry, dispatch notified the officers that there was a male caller, later identified as McDonald, on the phone claiming to be inside Victim's house and he requested dispatch to "send somebody" inside the house. Dispatch told McDonald that he needed to come out of the house. McDonald ultimately complied and was detained without incident.

2

Subsequently, several officers entered the residence. Officers found Victim in an upstairs bedroom, on a bed with a blanket pulled up toward her chest, as though she were asleep. A gun was located on the floor next to the bed. Victim had a gunshot wound to her head and was declared deceased. Victim's autopsy revealed scant gunpowder stippling on the bridge of her nose as well as in the sclera of her eyes, indicating that the weapon was fired "two to three feet [away] from her face." McDonald told police the gun had accidentally discharged resulting in his wife's death.

On April 15, 2021, after a three-day jury trial, the jury found McDonald guilty of one count of first-degree involuntary manslaughter and one count of armed criminal action.

At the sentencing hearing, McDonald called his sisters, K.P. and M.M., to testify on his behalf. K.P. testified that McDonald's actions were not consistent with his overall character and demeanor. K.P. stated that McDonald was a great family man and individual, and that he "never had a big problem in his life until now[.]" K.P. was very surprised by McDonald's actions because he was very caring and compassionate as McDonald took care of his mom until her death. K.P. had spoken with McDonald since his conviction and McDonald appeared to be "very confused and [was] very apologetic." According to K.P., McDonald had "been very hurt by it himself and loves his wife."

M.M. testified that she was surprised when McDonald was charged because that was not the person she knew him to be. M.M. characterized McDonald as a gentle person because he had helped take care of his mother and sister prior to their deaths. When speaking with McDonald after his conviction, M.M. testified that he had expressed

3

to her that he messed up and that he could not believe it. M.M. believed that what happened was an accident because "[i]t's nothing that [McDonald] would intentionally have tried to do."

At the conclusion of the hearing, McDonald apologized to Victim's family. When questioned by the trial court about his attorney's services in this case, McDonald stated Counsel did everything he wanted him to do, and Counsel did not fail to contact any witnesses McDonald thought Counsel should contact on his behalf. The only complaint McDonald expressed was that Counsel never went over the sentencing assessment report with him. The trial court sentenced McDonald to ten years' imprisonment for Count I, involuntary manslaughter, and twenty years' imprisonment for Count II, armed criminal action, with both sentences to run consecutively with one another.

McDonald filed his notice of direct appeal, and subsequently filed a voluntary dismissal of that appeal. On May 31, 2022, this Court issued its mandate and ordered the appeal be dismissed.

On May 20, 2022, McDonald filed a *pro se* motion for postconviction relief under Rule 29.15.[3] McDonald's appointed counsel subsequently filed an amended motion. Pertinent to this appeal, McDonald's amended motion alleged Counsel was ineffective for: failing to prepare and adduce additional testimony from K.P. at the sentencing

---

[3] McDonald's 29.15 motion was prematurely filed *before* this Court's mandate had been issued. *See* Rule 29.15 (b) (2022) ("The motion shall be filed no earlier than . . .the date the mandate of the appellate court issues affirming the judgment or sentence."). Nevertheless, McDonald's motion is considered to be filed on May 31, 2022, the day this Court issued its mandate. *Id.* ("If the motion if filed prematurely, such motion shall be considered as filed . . . the date the mandate of the appellate court issues affirming the judgment or sentence.").

hearing; failing to prepare and adduce additional testimony from M.M. at the sentencing hearing; and failing to investigate and retain a mental health expert to testify at the sentencing hearing. An evidentiary hearing was held. K.P., M.M., a psychologist ("Doctor"), and Counsel all testified.

K.P. testified that at some point before the shooting, McDonald went to a doctor because he was having some memory issues. K.P. noticed that as McDonald got older, he began to keep his head down a lot at gatherings. On one instance, K.P. noticed McDonald was zoned out and when she asked him what was going on he said, "One day when I wake up, I won't know who you are[.]" Another instance in which K.P. was concerned about McDonald's memory issues was when McDonald drove all the way to Kansas City, Kansas, and he did not know why he drove there. K.P. testified that family members "all started noticing things, but nobody ever made a big deal out them[.]" While K.P. spoke at the sentencing hearing, Counsel did not prepare her in advance to testify. K.P. stated that if she were prepared to testify, she would have also testified about some of her concerns with McDonald's memory issues and spoken more about his character.

M.M. testified at the evidentiary hearing that days before the shooting McDonald seemed frazzled and edgy compared to his normal, talkative, jokester self. Only now when M.M. thought back to that day, did it raise a concern for her about McDonald's cognitive decline or memory issues. M.M. never shared her concerns with Counsel because he never really asked if McDonald's family had concerns. M.M. testified that Counsel did not provide her with any information about testifying at the sentencing

5

hearing, and she only learned she could speak while at the hearing. If M.M. had been prepared in advance she would "have gone back and probably just thought of other things that came to [her] mind."

Doctor, a psychologist, also testified at the evidentiary hearing. Doctor was retained by McDonald to investigate whether McDonald suffered from dementia or a dementia-related condition. Doctor reviewed McDonald's court and medical records, met with McDonald, conducted a clinical interview, conducted a neuropsychological test with McDonald, and spoke with two of McDonald's family members. Upon review of McDonald's medical records, Doctor found a single record from McDonald's treating physician, in 2015, reporting McDonald had some early onset memory issues. McDonald's overall score from the neuropsychological testing placed him "below one percent of the population" with his cognitive abilities.[4] McDonald's immediate memory ability and delayed memory ability were in the impaired range. Additionally, McDonald's attention span and visuospatial abilities scored in the low and borderline range.

During McDonald's interview with Doctor, McDonald shared that he was having memory issues such as forgetting where he was going, misplacing items, and forgetting what he was talking about in conversations. Doctor testified that McDonald was having a hard time articulating his thoughts and remembering what he was trying to say during the

---

[4] We note for clarity that according to Doctor's report, McDonald's overall score placed him *in the bottom one percent* as "he performed worse than 99 out of 100 persons in his same age group."

6

interview. Doctor opined that in the months preceding the crime, McDonald suffered from mild neurocognitive disorder. Doctor explained that an individual with mild neurocognitive disorder has a lower level of cognitive abilities. With McDonald having mild neurocognitive disorder, he could still live independently, just with some cognitive problems. Doctor testified that mild neurocognitive disorder could affect judgment; however, Doctor "didn't find anything specifically in this evaluation about [McDonald's] judgment being rendered deficient or lowered, but it's a possibility it could happen with this disorder."

McDonald's sentencing assessment report included a statement from McDonald that he was diagnosed with early stage dementia, and Counsel stated McDonald "may have said that to me." Counsel, however, observed no evidence of any memory issues throughout his representation because McDonald, "was always able to track with me and answer questions and he recalled what I said to him . . . ." Counsel never considered ordering medical records or retaining a mental health expert because he saw no indication that McDonald had any memory problems or anything that would indicate impaired memory or cognition. Additionally, Counsel testified that McDonald told him he was not seeing a psychiatrist or psychologist, and McDonald also stated he was not taking any medications which might affect his memory.

Counsel never had any concern about McDonald's mental capacity at trial or at the sentencing hearing. Thus Counsel testified it was not part of his strategy to further explore the possibility of mental incapacity because McDonald was able to assist Counsel at every step of preparation, and McDonald "had full capacity, cognition, [] he was

7

logical, [and] reasonable[.]"  Counsel's only strategy was to obtain a verdict of acquittal or a conviction on a lesser-included offense.  As for the sentencing hearing, Counsel thought it was the best course to present evidence from McDonald's family members that McDonald's behavior was inconsistent with what they had seen before.  Counsel "saw nothing tangible in the way of benefit from trying to present something regarding a slight mental incapacity resulting in perhaps a mitigated sentence.  It just didn't – it just didn't seem to lead anywhere."

On October 31, 2023, the motion court issued findings of fact, conclusions of law, and judgment denying McDonald's motion for post-conviction relief.  All of McDonald's claims failed "to meet the 'heavy burden' of establishing that his trial counsel's performance at the sentencing hearing was deficient, and that the deficiency prejudiced his defense."

The motion court found Counsel was not ineffective for failing to prepare and adduce additional testimony from K.P. and M.M. regarding any cognitive difficulties McDonald may have suffered from.  The motion court held McDonald failed to establish a reasonable probability that additional testimony from K.P. and M.M. would have resulted in a different outcome.  The motion court specifically found that "[h]ad these witnesses testified at sentencing regarding [McDonald's] memory issues, cognitive abilities[,] and change of demeanor in the time leading up to his crime, it would not have changed the outcome of the sentence imposed by the Court."  This finding is of particular import because the motion court and the trial were presided over by the same judge.

8

The motion court further found that Counsel was not ineffective for failing to retain a mental health expert. The motion court found Counsel's testimony to be credible that if he had been concerned with McDonald's mental health he "would have hired an expert to evaluate him, as it was his duty to do so." The motion court noted that McDonald failed to present evidence that Counsel was aware McDonald was suffering from a mild neurocognitive disorder, and because of this Counsel had no reason to believe McDonald suffered from this disorder. The motion court found McDonald failed to show a reasonable probability that had a mental health expert, like Doctor, testified at his sentencing hearing, the outcome would have been different. This appeal follows.

**Standard of Review**

Our review of a motion court's judgment denying a Rule 29.15 motion for post-conviction relief is limited to whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k) "A judgment is clearly erroneous only if this Court is left with a definite and firm impression that a mistake has been made." *Meiners v. State*, 540 S.W.3d 832, 836 (Mo. banc 2018) (internal quotation omitted). The motion court's findings are presumed correct, and we defer to the motion court's superior opportunity to judge the credibility of witnesses. *Shockley v. State*, 579 S.W.3d 881, 892 (Mo. banc 2019).

Although sentencing does not concern a defendant's guilt or innocence, "ineffective assistance of trial counsel at sentencing may warrant post-conviction relief because any amount of additional jail time has Sixth Amendment significance." *Binion v. State*, 649 S.W.3d 359, 368 (Mo. App. E.D. 2022) (internal quotation and citation

9

omitted).  "Trial counsel has a duty to a make reasonable investigation of possible mitigating evidence or to make a reasonable decision that such an investigation is unnecessary." *Id.* (internal quotation and citation omitted).

To be entitled to post-conviction relief for ineffective assistance of counsel, McDonald must show by a preponderance of the evidence that Counsel:  1) failed to exercise the level of skill and diligence reasonably competent trial counsel would in a similar situation; and 2) McDonald was prejudiced by that failure.  *Shockley*, 579 S.W.3d at 892 (citing *Strickland v. Washington*, 446 U.S. 668, 687 (1984)).  "Prejudice occurs when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation omitted).  In the context of a claim of ineffective assistance of counsel at a sentencing hearing, the movant must show that "but for trial court's errors, the result of the sentencing would have been different in that he would have received a lesser sentence." *Binion*, 649 S.W.3d at 368.

**Points I-II: Failure to Elicit Additional Fact Witness Testimony**

**Analysis**

McDonald argues the motion court clearly erred in denying his motion for post-conviction relief because he received ineffective assistance of trial counsel in that Counsel: Point I, failed to elicit additional information from K.P. related to McDonald's memory issues and personality change; and Point II, failed to elicit additional information from M.M. related to McDonald's memory issues and personality change.[5] For ease of analysis, Point I and Point II will be addressed together.

"[W]hen a movant claims that counsel failed to elicit additional testimony . . . the movant must specifically allege and prove the information his attorney failed to elicit, that reasonable questioning would have revealed it, and how that information would have aided his position." *Whitt v. State*, 655 S.W.3d 202, 209 (Mo. App. E.D. 2022).

McDonald alleges Counsel was ineffective due to his failure to elicit additional testimony from K.P. and M.M. about his memory problems. McDonald asserts that based on the record, Counsel knew of McDonald's memory issues from McDonald's family members but failed to prepare them to testify and failed to question them at the sentencing hearing about McDonald's memory issues. McDonald asserts the additional

---

[5] In the motion court's judgment, it found Counsel could not be ineffective for failing to call K.P. and M.M. as witnesses at the sentencing hearing because they both in fact testified. According to McDonald, the motion court misconstrued his claims, and thus McDonald asserts remand is required. McDonald's argument is without merit because the motion court did not end its analysis after the above finding but went on to make specific findings and conclusions as to McDonald's claims that Counsel failed to prepare and adduce additional testimony from K.P. and M.M. regarding McDonald's memory issues. The motion court specifically found, "Movant fails to establish a reasonable probability that the additional testimony [from K.P. and M.M.] would have resulted in a different outcome."

11

testimony from K.P. and M.M. would have aided his position as it is mitigation evidence. McDonald has failed to show Counsel's failure to elicit additional testimony from K.P. and M.M. about McDonald's memory issues amounted to ineffective assistance of counsel.

At the evidentiary hearing, Counsel acknowledged that the sentencing assessment report included a statement from McDonald that he had been diagnosed with early onset dementia. This reported diagnosis, however, was inconsistent with Counsel's observations and experiences with McDonald throughout his representation of McDonald, as McDonald was always able to track logically, think clearly, and was able to reason with Counsel. Based on these personal experiences, Counsel saw no indication that McDonald had memory problems or anything that would indicate impaired cognition. As such, Counsel believed there was "nothing tangible in the way of benefit from trying to present something regarding a slight mental incapacity resulting in perhaps a mitigated sentence[,]" because such a route did not seem to lead anywhere. McDonald has failed to show Counsel's decision not to elicit additional testimony from K.P. and M.M. about McDonald's memory issues was unreasonable. *See Watson v. State*, 520 S.W.3d 423, 435 (Mo. banc 2017) ("Trial strategy decisions may be a basis for finding ineffective assistance of counsel only if that decision was unreasonable.").

McDonald further asserts K.P.'s and M.M.'s testimony, as well as Doctor's testimony, would have provided more than just McDonald's cognitive decline, it would have established "McDonald's cognitive decline impacted his behavior and personality." McDonald recognizes that while this Court is to give special deference when the motion

12

court judge and the sentencing court judge are the same, as is the case here, McDonald's case is "such a rare case," that the motion court's finding of no prejudice was clearly erroneous. *See Flaherty v. State*, 694 S.W.3d 413, 423 (Mo. banc 2024)(noting additional deference is due to the motion court's findings when the judge also presided over the underlying criminal trial); *Bozeman v. State*, 653 S.W.3d 132, 137 (Mo. App. E.D. 2022) ("Special deference is given when the motion court judge and sentencing judge are the same."). We disagree.

At the evidentiary hearing, K.P. testified generally that she was concerned about McDonald's memory issues, sharing one anecdotal story about McDonald driving to Kansas City, Kansas, and not remembering why. K.P. also testified before the motion court McDonald kept his head down a lot at family gatherings as he got older, and he once told K.P. that one day he would wake up and not know who she is. K.P. did not further elaborate on her concerns regarding McDonald's memory issues but stated generally that if she had been prepared by Counsel to testify she would have testified about them. As for M.M., she testified that in the days leading up to the shooting McDonald seemed frazzled and edgy but that it was only now when reflecting on it at the evidentiary hearing, that it raised a concern for her about McDonald's cognitive decline or memory issues. M.M. did not elaborate on any concerns regarding McDonald's memory issues or what additional testimony she would have provided at the sentencing hearing. The motion court concluded that even if K.P. and M.M. had provided this additional testimony at the sentencing hearing, "it would not have changed the outcome of the sentence imposed by the Court." After reviewing the record, we are not left with a

13

definite and firm impression that a mistake has been made. *See Meiners*, 540 S.W.3d at 836. Because of the high level of deference afforded to the motion court's judgment and the lack of evidence showing a reasonable probability the sentencing court would have returned a lesser sentence had K.P. and M.M. provided such testimony on McDonald's memory issues, McDonald has failed to demonstrate he was prejudiced by Counsel's alleged errors. Point I and Point II denied.

**Point III: Failure to Investigate and Call an Expert**

In McDonald's third and final point on appeal, he asserts the motion court clearly erred in denying his motion for post-conviction relief because Counsel was ineffective in failing to further investigate McDonald's memory issues, which would have ultimately led Counsel to retain and present testimony at the sentencing hearing from an expert like Doctor.

In order for McDonald to establish Counsel was ineffective for failing to investigate, McDonald must allege: 1) what information Counsel failed to discover; 2) that a reasonable investigation would have resulted in the discovery of such information; and 3) the information would have aided McDonald. *See Walker v. State*, 694 S.W.3d 69, 78 (Mo. App. W.D. 2024). When dealing with mental health evidence, as is the case here, McDonald must demonstrate that Counsel had some reason to investigate McDonald's mental health based either upon information provided to Counsel by McDonald or upon Counsel's own observations of McDonald. *See Prince v. State*, 390 S.W.3d 225, 233 (Mo. App. W.D. 2013).

14

McDonald asserts Counsel was aware of McDonald's memory issues as indicated by: 1) Counsel stating at the sentencing hearing that McDonald did not remember going over the sentencing assessment report with him; 2) the sentencing assessment report including information that McDonald reported he had been diagnosed with dementia; and, 3) McDonald's family members telling Counsel that McDonald had memory issues. McDonald asserts that these instances, either individually or combined, should have prompted Counsel to further investigate McDonald's mental health and retain a mental health expert, such as Doctor.

The motion court did not err in finding Counsel was not ineffective by failing to investigate McDonald's memory issues and retain a mental health expert. "The duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Prince*, 390 S.W.3d at 234 (internal citation and quotation omitted). Moreover, when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless, such as the case here, "counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.* (quoting *Strickland*, 466 U.S. at 691). While McDonald's sentencing assessment report included McDonald's statement of early onset dementia diagnosis, this was inconsistent with what Counsel observed during all of his interactions with McDonald. McDonald was always able to track logically, think clearly, and he was able to reason, and thus Counsel saw no indication that McDonald had memory problems or anything that would indicate impaired cognition. Furthermore, we defer to the motion

15

court's credibility determination in finding Counsel's testimony to be credible that, if Counsel had been concerned with McDonald's mental health he would have hired an expert to evaluate him. *See Shockley*, 579 S.W.3d at 892. Based on the record, Counsel's decision to not investigate McDonald's mental health and retain a mental health expert was reasonable. *See Prince*, 390 S.W.3d at 234 (holding counsel's failure to investigate defendant's mental health as mitigation evidence in penalty phase was not deficient where counsel received no additional information about defendant's mental health and defendant never gave counsel cause to think there were mental health issues).

Moreover, even if Counsel's decision not to investigate McDonald's mental health and retain a mental health expert had been unreasonable, which it was not, McDonald failed to show he was prejudiced by this alleged error. As noted, special deference is given in situations like this one, where the motion court and sentencing court are the same. *See Flaherty*, 694 S.W.3d at 423; *Bozeman*, 653 S.W.3d at 137. At sentencing, the court was aware McDonald reported a diagnosis of early onset dementia. While Doctor testified that McDonald suffered from mild neurocognitive disorder during the months preceding and at the time of the incident, Doctor did not testify that this would have affected McDonald's judgment at the time of the crime. Even if Doctor had provided this testimony at the sentencing hearing, the motion court concluded "it would not have changed the outcome." After reviewing the record, we are not left with a definite and firm impression that a mistake has been made. *See Meiners*, 540 S.W.3d at 836. Given the high level of deference afforded to the motion court's judgment and the lack of evidence showing a reasonable probability that the sentencing court would have

16

returned a lesser sentence had Doctor testified, McDonald fails to satisfy by a preponderance of evidence that he was prejudiced by Counsel's alleged error. Point III denied.

## Conclusion

For the above stated reasons, we affirm the judgment of the motion court.

_____
Gary D. Witt, Presiding Judge

All concur

17